# United States District Court

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

UNITED STATES OF AMERICA

v.

MICHAEL SHAWN CAMPBELL

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:06 mj 47-VPM

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __May 17, 2006__, in __Houston__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s), (Track Statutory Language of Offense)

did knowingly and intentionally possess, with intent to distribute, cocaine base, a Schedule II Controlled Substance, and did sell or otherwise dispose of a firearm to a person, knowing or having reasonable cause to believe such person has been convicted of a crime punishable by imprisonment for a term exceeding one year;

in violation of Title __21/18__ United States Code, Section(s) __841(a)(1)/922(d)(1)__. I further state that I am an __FBI Special Agent__ and that this complaint is based on the following facts:
  Official Title

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant/M. Faulkner

Sworn to before me and subscribed in my presence,

May 17, 2006                              at    Montgomery, Alabama
Date                                                City and State

VANZETTA P. MCPHERSON, U. S. MAGISTRATE JUDGE   _____
Name & Title of Judicial Officer                 Signature of Judicial Officer

## AFFIDAVIT

I Margaret L. Faulkner do depose and state the following:

1. I am a Special Agent with the FBI and have been so employed for the past 18 years. Prior to my employment with the FBI, I was employed with the Montgomery Police Department for 10 1/2 years. As part of my duties as a law enforcement officer, I have investigated numerous violent crime offenses to include allegations of Police Corruption.

2. This affidavit is being made in support of a Complaint and arrest warrant for Michael Shawn Campbell, white male, date of birth December 09, 1978, Social Security Account Number 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, who resides at 1204 Cannon Drive, Dothan, Alabama. The information contained in this affidavit is based upon information provided by other law enforcement officials, to include Special Agent Steven Zeringue of the Dothan Resident Agency, Ashford Police Department, Investigator Eddie Ingram, and Bureau of Alcohol, Tobacco, and Firearms (ATF), Special Agent Yolanda Thornton.

3. I have probable cause to believe that Michael Shawn Campbell has violated:

a) Title 18, United States Code, Section 922(d)(1), selling or otherwise disposing of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; and

b) Title 18, United States Code, Section 841(a), distribution and possession with intent to distribute controlled substances (cocaine base).

4. Joshua Whigan is a convicted felon. Whigan has also been a source of information for Ashford Police Department Investigator Eddie Ingram. His criminal history is as follows: Charge 1: Receiving Stolen Property 2nd degree, July 8, 1999, sentenced to two years

confinement. Arrest 2: Dangerous Drug Possession of Controlled Substance, June 8, 1999, sentenced to eight years. Arrest 3: Received Stolen Property 2nd degree, December 16, 2003, dismissed. Arrest 4: Rape no force - Rape 2nd, Sentenced to 17 years, awaiting probationary hearing on May 25, 2006. Arrest 5: Firing-menacing, June 26, 2004. Arrest 6: Marijuana Possession - 1st, August 11, 2004, case is pending. Arrest 7: Failure to Appear, October 10/7/2004. Arrest 8: Failure to Register as a Sex Offender, June 30, 2005. Arrest 9: Marijuana Possession, and Possession of controlled substance (also contains firearms charges), August 24, 2005, case is currently pending.

   5. Michael Shawn Campbell is a Houston County Deputy Sheriff. He is assigned to the narcotics division.

   6. On or about June 2005, Michael Shawn Campbell responded to a domestic violence report for Houston County Sheriff's Department in which Whigan and others were involved in a fight. Whigan suffered an injury to his eye. During the conversation between Whigan and Campbell, Whigan disclosed his criminal history to Campbell to include the fact that he had spent over a year in prison.

   7. In November 2005, Houston County Deputies made a traffic stop, pulling over Whigan who was the operator of the vehicle. Tracy McCord and Michael Shawn Campbell took part in the stop. During that stop, McCord told Whigan, in front of Campbell, "Every time I see you I'm going to pull you over and search you and anyone in your vehicle, because of your past criminal history ", or words to that effect.

   8. On or about December 9, 2005, Whigan contacted Investigator Ingram and informed Ingram that Michael Shawn Campbell was trying to sell him, (Whigan), a hand gun. At the time of the call, Ingram was out of town deer hunting, and asked Whigan to hold off on the sale of the gun until Ingram returned.

9. Campbell came to the defendant's residence that same night. At that time, Campbell sold a Springfield Armory .357 SIG caliber Semi-Automatic Pistol, serial number US333821, to convicted felon Joshua Whigan in exchange for $400 in US currency. Whigan reported the sale to Ingram and turned the firearm over to him the next day (December 10, 2005).

10. ATF SA Yolanda Thornton advised that an ATF data base query revealed that the Springfield Armory .357 Sig Semi-Automatic pistol, serial number US333821, was purchased by Michael Campbell, DOB 12/9/1978. On 02/23/2006, SA Zeringue queried the above pistol in NCIC to see if the gun was reported stolen. The NCIC check did not locate any records indicating that a Springfield Armory .357, serial number US333821 was reported stolen. On 05/16/2006, an off line search by CIJIS failed to locate any record stating the Springfield Armory .357, serial number US333821 had ever been entered into NCIC.

11. In February 2006, Whigan called Investigator Ingram stating that Campbell wanted to meet with him (Whigan). Ingram provided Whigan a body recorder and instructed him to meet with Campbell and talk about the gun transaction. Whigan met with Campbell. The recording of the conversation was reviewed by SA Zeringue. The following is a synopsis of the taped conversation that pertained to the gun transaction: Whigan asked Campbell if it was okay for him to have the gun he purchased from Campbell "because I'm a convicted felon". Campbell indicated that it was okay. Campbell indicated to Whigan that having a gun was a federal crime not a state crime, and the state does not enforce that law. Whigan asked more about the gun and Campbell replied that the weapon was untraceable because he purchased it himself and there was no record of the purchase.

12. In March of 2006, Campbell met with Whigan, and discussed various ways to supply him with cocaine. Under the arrangement, Whigan would sell the cocaine and split the proceeds with Campbell. On 3/29/2006, Whigan took and passed a polygraph examination relating to

these events.

13. On or about April 19, 2006, Campbell also asked Whigan to purchase a small caliber handgun for Campbell's wife. This conversation was audio-taped and was later reviewed by SA Steven Zeringue.

14. In May of 2006, Campbell supplied Whigan with six cookies of cocaine base and asked Whigan to sell them for him. (Note: "cookie" is a slang term for a unit of crack cocaine about the size of a compact disc or large desert cookie; the cookie of crack is broken into pieces and then sold to consumers). Whigan told Campbell he could not move that much cocaine, and only kept two of the cocaine cookies. Campbell took back the remaining four cookies, and told Whigan he expected to be paid by Wednesday, May 17, 2006.

15. Whigan notified the FBI that Campbell had supplied him with the cocaine cookies, and, under surveillance, retrieved the cocaine cookies from his residence. An agent conducted a field test of one of the cookies, and it tested positive for cocaine.

16. On May 16, 2006, Whigan and Campbell spoke by telephone in a monitored telephone conversation. This conversation was recorded by the FBI. During the conversation, Campbell agreed to meet Whigan on May 17, 2006, and supply him with more cookies of cocaine, as well as 1500 pills of ecstacy (MDMA), a Schedule II controlled substance. At this meeting, Whigan is supposed to pay Campbell for the cocaine cookies Campbell delivered previously.

## CONCLUSIONS

17. Based upon the foregoing, affiant has probable cause to believe that Michael Shawn Campbell, has violated Title 18, United States Code, Sections 922(d)(1), selling or otherwise disposing of any firearm or ammunition to any person knowing or having reasonable cause to

believe that such person, is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; and Title 18, United States Code, Section 841(a), distribution and possession with intent to distribute controlled substances (cocaine base).

_____
Special Agent Margaret L. Faulkner
Federal Bureau of Investigation

Sworn to and subscribed
before me this __17th__
day of May, 2006

_____
United States Magistrate Judge